No. 12-16752

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PULASKI & MIDDLEMAN, LLC; JIT PACKAGING, INC.; RK WEST, INC.; and RICHARD OESTERLING, | ) ) ) ) |
| Plaintiffs-Appellants, | ) ) |
| v. | ) ) |
| GOOGLE INC., | ) ) |
| Defendant-Appellee. | ) ) ) |

## DEFENDANT-APPELLEE GOOGLE INC.'S MOTION TO STAY ISSUANCE OF THE MANDATE

MICHAEL G. RHODES
WHITTY SOMVICHIAN
KYLE C. WONG
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
(415) 693-2000
rhodesmg@cooley.com
wsomvichian@cooley.com
kwong@cooley.com

December 14, 2015

NEAL KUMAR KATYAL
MARY HELEN WIMBERLY
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com
maryhelen.wimberly@hoganlovells.com

*Counsel for Defendant-Appellee
Google Inc.*

## MOTION TO STAY ISSUANCE OF THE MANDATE

Pursuant to Federal Rule of Appellate Procedure 41, Defendant-Appellee Google Inc. respectfully requests that the Court stay the mandate for 90 days pending Google's filing of a petition for a writ of certiorari in the Supreme Court. This motion is being "served on all parties" as set forth in the attached Certificate of Service; the certiorari petition will "present a substantial question"; and "there is good cause for a stay," as detailed below. Fed. R. App. P. 41(d)(2)(A).[1]

## BACKGROUND

This is a case about Google AdWords, an online advertising service. Plaintiffs in this suit all purchased advertising services from Google AdWords. They allege that Google misled them in violation of California law by showing their ads on two types of supposedly low-quality websites: parked domains and error pages.

Plaintiffs brought this putative class action against Google under California's Unfair Competition and Fair Advertising Laws, seeking equitable restitution. ER14. They moved to certify a class consisting of "[a]ll Google AdWords Customers who, during the [class period], were charged by Google for clicks on their advertisements that Google placed on parked domains or error pages." ER12.

---

[1] Plaintiffs-Appellants, in an email dated December 14, 2015, have indicated that they oppose this motion.

The District Court denied Plaintiffs' motion for certification of a Rule 23(b)(3) class. *See* Fed. R. Civ. P. 23(b)(3) (allowing certification only if "questions of law or fact common to class members predominate over any questions affecting only individual members"). The Court was "unconvinced" that "commonalities predominate." ER22. The main obstacle was "the individual nature of the restitutionary relief sought." *Id*. Plaintiffs' theory rested on "what AdWords customers would have paid 'but for' the alleged misstatements or omissions." ER23. Yet, as the Court explained, "any effort to determine what advertisers 'would have paid' * * * requires a complex and highly individualized analysis of advertiser behavior for each particular ad that was placed." *Id.*

Plaintiffs had proposed three methods of calculating restitution, none of which "sufficiently [took] into account the unique circumstances surrounding the AdWords auctions." ER24. Plaintiffs' primary proposal—which was the focus on appeal—is called the "Smart Pricing Method." "Smart Pricing" refers to a discount that Google gives advertisers as a business accommodation in certain circumstances. It involves looking at the aggregate performance of ads on a given webpage, and comparing it to the performance of ads on a benchmark page like google.com. Performance is measured by a "conversion rate," which is the average rate at which a click on an advertisement leads to a particular business result for the advertiser, like a purchase or a sign-up. Slip Op. 5. Google uses

Smart Pricing in certain contexts to discount the cost-per-click bid on a website with lower performance.

Plaintiffs sought to use that Smart Pricing discount as a way to measure restitution. "The amount of restitution owed a class member would be the difference between the amount the advertiser actually paid and the amount paid reduced by the Smart Pricing discount ratio." *Id.* at 7. As the District Court explained, the " 'Smart Pricing Method' would apply a uniform discount on all ads placed on a parked domain—*even if* an individual advertiser's ads on that web page outperformed ads appearing on other types of websites." ER24. Because of this, the District Court concluded that "applying a uniform discount" to all putative class members, regardless of their circumstances, was "too inexact a solution." ER28. It held that "individualized issues of restitution permeate the class claims," and "the proposed class is not 'sufficiently cohesive to warrant adjudication by representation.' " ER25 (quoting *Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 623 (1997)).

A panel of this Court reversed. It held, first, that difficulties in calculating individual restitution amounts cannot be the basis for refusing to certify a class. "[D]amage calculations alone cannot defeat certification." Slip Op. 14 (quoting *Yokoyama* v. *Midland National Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). Based on that principle, the panel did not even consider whether individual

restitution questions would predominate over common class issues. Second, the panel found that a simple formula based on the Smart Pricing Method was an acceptable way to measure restitution for class members. "Because restitution * * * measures what the advertiser would have paid at the outset, rather than accounting for what occurred after the purchase, using a ratio from Google's data that adjusts for web page quality is both targeted to remedying the alleged harm and does not turn on individual circumstances." *Id.* at 20. The panel therefore reversed the District Court and remanded.

Google petitioned the Court for panel rehearing and rehearing en banc. Its petition was denied on December 8, 2015. Absent a stay, the mandate will issue on December 15, 2015. *See* Fed. R. App. P. 41(b).

## ARGUMENT

Under Fed. R. App. P. 41(d)(2)(A), a stay motion "must show that the certiorari petition would present a substantial question and that there is good cause for a stay." Both criteria are met here.

## I. THE CERTIORARI PETITION WILL PRESENT SUBSTANTIAL QUESTIONS ON WHICH THE SUPREME COURT IS REASONABLY LIKELY TO GRANT REVIEW AND REVERSE.

Google's certiorari petition will present substantial questions concerning the rules governing certification of class actions under Federal Rule of Civil Procedure 23(b)(3). This is an area of law in which the Supreme Court has frequently granted

certiorari in recent years. *See, e.g.*, *Tyson Foods, Inc.* v. *Bouaphakeo*, No. 14-1146

(U.S.), *cert. granted*, 135 S. Ct. 2806 (June 8, 2015); *Halliburton Co.* v. *Erica P.*

*John Fund, Inc.*, 134 S. Ct. 2398 (2014); *Comcast Corp.* v. *Behrend*, 133 S. Ct.

1426 (2013); *Amgen Inc.* v. *Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184

(2013); *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541 (2011). And in *Wal-Mart*

and *Comcast*, the two recent cases that addressed Rule 23(b)(3) standards

generally, the Court substantially curtailed lower courts' (including this Court's)

too-permissive applications of Rule 23 to class-certification decisions.

There is a reasonable likelihood that the Court will follow the same path

here. The panel's decision ruled on two issues that are subjects of splits among the

courts of appeals over (1) whether courts must reject a formula-based class

damages model that relies on the average experience of class members, and

(2) whether courts must deny class certification under Fed. R. Civ. P. 23(b)(3) if

individualized damages issues predominate. The Supreme Court has already

granted review on the first question in *Tyson Foods*. And the second question is

also primed for review. A recent certiorari petition on the question garnered

substantial amicus support in favor of review. *See Carpenter Co.* v. *Ace Foam,*

*Inc.*, No. 14-577 (U.S.), *cert. denied*, 135 S.Ct. 1493 (2015). Vehicle problems

appear to have precluded review of that case (namely, that the court of appeals

declined to grant permission to appeal the district court's class-certification

decision, so the Supreme Court would have been the first tribunal to review the decision). But no such vehicle problems exist here. Accordingly, the Court is reasonably likely to grant review and reverse.

**A.     The Supreme Court Has Already Granted Review Of The Formula-Based Approach To Class Monetary Relief That The Panel Approved.**

1. The first question addresses the panel's approval of a formula-based approach to classwide restitutionary relief. The panel held that restitution could be determined for each class member using a uniform discount rate. Slip Op. 5, 7, 20. It was enough that the rate was extrapolated "from Google's data" and purported to serve as a uniform means to "adjust[] for web page quality." *Id.* at 20. That, according to the panel, was a sufficient indicator of "the value of the service at the time of purchase," which did "not turn on individual circumstances." *Id.* Google's certiorari petition will present the question whether it is appropriate for courts to approve a classwide monetary-relief model based on the application of a rate derived from the average experience of advertisers. E24.

The cert-worthiness of this question is already established. In *Tyson Foods*, the Court granted certiorari to decide "[w]hether differences among individual class members may be ignored and a class action certified under Federal Rule of Civil Procedure 23(b)(3) * * * where liability and damages will be determined with statistical techniques that presume all class members are identical to the average

observed in a sample." *See Tyson Foods* Cert. Pet. i; *see also id.* at 3, 15-21, 24,

2015 WL 1285369 (describing split among the court of appeals on this issue).[2] If

the Supreme Court decides the question as presented in *Tyson Foods*, it would

likely follow its standard practice when a different pending case decides the same

issue: grant Google's petition on the same question, and then summarily vacate this

Court's judgment and remand for reconsideration in light of its *Tyson Foods*

ruling. *See, e.g.*, *RBS Citizens, N.A.* v. *Ross*, 133 S. Ct. 1722 (2013) (granting

certiorari, vacating the court of appeals' judgment affirming class certification, and

remanding for further consideration in light of *Comcast*); *Chinese Daily News, Inc.*

v. *Wang*, 132 S. Ct. 74 (2011) (granting certiorari, vacating the court of appeals'

judgment affirming class certification, and remanding for further consideration in

light of *Wal-Mart*).

     A certiorari grant would be likely even if the Supreme Court decides *Tyson*

*Foods* on other grounds—such as under the substantive law of the Fair Labor

Standards Act (FLSA), rather than Rule 23. *See, e.g.*, Arg. Tr. 9-10 (Kagan, J.)

(observing that a prior case, *Mt. Clemens*, "suggest[s] that certain kinds of

---

[2] *Compare Epenscheid* v. *DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013); *and*
*McLaughlin* v. *American Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008); *and*
*Broussard* v. *Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 343 (4th Cir.
1998); *and In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990); *with*
*Bouaphakeo* v. *Tyson Foods, Inc.*, 765 F.3d 791 (8th Cir. 2014), *cert. granted*, 135
S. Ct. 2806 (2015); *and In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir.
2014).

statistical evidence are completely appropriate in FLSA cases generally," so "the question that you really are putting before us is not a Rule 23 question, it's a question of whether this sort of evidence complies with the *Mt. Clemens* standard; isn't that right?"); *id.* at 12 (Kennedy J.) ("it seems to me Justice Kagan is precisely right"). That is just what happened in *Campbell-Ewald Co.* v. *Gomez*, No. 14-857 (U.S.), *cert. granted*, 135 S. Ct. 2311 (May 18, 2015), where the Supreme Court granted review to decide a question that it had first granted certiorari to review in *Genesis Healthcare Corp.* v. *Symczyk*, 133 S. Ct. 1523 (2013), but ultimately left undecided in that case. There is at least a reasonable likelihood that the same thing could happen here: the Court decides *Tyson Foods* on narrower, FLSA-specific grounds, and then grants Google's certiorari petition to answer the same question more generally under Rule 23.

2. There is likewise a reasonable likelihood that the Supreme Court would reverse this Court's judgment. In *Wal-Mart*, the Supreme Court held that a court cannot, under the banner of Rule 23, "replace [individualized] proceedings with Trial by Formula." 131 S. Ct. at 2561. The plaintiffs in *Wal-Mart* had identified a sample set of class members, calculated damages for that sample set, and then extrapolated classwide damages from that sample. But the Court expressly "disapprove[d]" just that "novel project" of computing class damages by a formula "without further individualized proceedings." *Id.* "Because the Rules Enabling

Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b); a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims." *Id*. (citation omitted).

The panel's opinion has just that effect. The panel endorsed a type of "Trial by Formula." It approved the "Smart Pricing Method" to calculate restitution for all class members by purporting to identify what the advertisers "would have paid" using "the Smart Pricing discount ratio," Slip Op. 7, a uniform methodology that compares the average performance of advertisements on parked domains and error pages with the average performance of advertisements on a benchmark site. The problem is that this method is far too blunt a tool under Supreme Court precedent for calculating classwide restitution.

First, the approved recovery model would provide restitution to advertisers who *benefited* from Google's display of their advertisements on parked domains. Plaintiffs' Smart Pricing Method sweeps into its reach those with no injury. That is an Article III problem—indeed, the Supreme Court is considering it as part of its second question in *Tyson Foods*. *See Tyson Foods* Cert. Pet. i, 2015 WL 1285369 ("whether a class action may be certified or maintained under Rule 23(b)(3) * * * when the class contains hundreds of members who were not injured and have no legal right to any damages").

9

Second, the panel's ruling presents a Rules Enabling Act problem because it gives class members substantive recovery that would be unavailable to them as individual plaintiffs.  In particular, the panel's decision expands the substantive rights of putative class members by requiring the District Court to decide restitutionary recovery on a classwide basis, relying on the average experience of advertisers.  California law, however, is quite clear that a trial court exercises complete discretion whether to order restitution for a statutory violation.  *Cortez* v. *Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (2000).  And to properly exercise that discretion, the court "must" consider "the equities between the parties"—an inherently individualized inquiry  *Id.* at 181.  *See also In re Tobacco Cases II*, 192 Cal. Rptr. 3d 881, 895-896 (Ct. App. 2015); *Day* v. *AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998).

The District Court therefore cannot measure the proper amount of restitution on a classwide basis in this case, where many advertisers—like one of the named plaintiffs here, RK West—actually achieve *higher* conversion rates on parked domains and error pages than on the Smart Pricing benchmarks.  ER24.  The Smart Pricing method "would apply a uniform discount for *all* ads placed on a parked domain."  *Id.* (emphasis added).  In this way, Plaintiffs seek to use a formula that would award restitution to those who *gained* or were simply uninjured by Google's supposed misconduct.  To allow Plaintiffs to use the class action mechanism in that

10

way would "enlarge" their substantive rights, plain and simple. "[A] class cannot be certified on the premise that [Google] will not be entitled to litigate" the actual amount of restitution owed to Plaintiffs, and the panel should not have done it. *Wal-Mart*, 131 S. Ct. at 2561.

Third and finally, the panel's decision papers over variation in appropriate restitutionary recovery in the service of class certification. The panel even saw it as a benefit that its approved measure of restitution did "not turn on individual circumstances," Slip Op. 20—not because they did not exist, or were irrelevant, but because Plaintiffs had come up with a formula that could gloss over those individual differences. That produces exactly the type of arbitrary results that *Comcast* warned against when the Court rejected a rule providing that "at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide." 133 S. Ct. at 1433. "Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.*

For these reasons, there is a reasonable likelihood that the Supreme Court would grant certiorari on this first question presented and reverse.

### B. The Supreme Court and Other Circuits Have Held That Damages Calculations Must Be Considered in the Predominance Analysis.

1. Google's certiorari petition will also present a second substantial question: Whether courts must deny class certification where individualized monetary-relief issues predominate. *Comcast* answered that question affirmatively, holding that

plaintiffs "cannot show Rule 23(b)(3) predominance" where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast Corp.* v. *Behrend*, 133 S. Ct. 1426, 1433 (2013). Nonetheless, even after that clear mandate, the courts of appeals are currently divided over this important question—a compelling reason for the Supreme Court to grant review. *See* S. Ct. R. 10.

The majority of the circuits have recognized that "*Comcast* reiterated that damages questions *should be considered* at the certification stage when weighing predominance issues." *Roach* v. *T.L. Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015) (emphasis added). *See also, e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 18 (1st Cir. 2015) ("To meet the predominance requirement, the party seeking certification must show that * * * damages would * * * be established by sufficiently common proof." (quotation marks and emphasis omitted)); *Wallace B. Roderick Revocable Living Trust* v. *XTO Energy Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013) ("material differences in damages determinations" that "require individualized inquiries" may "destroy[]" predominance); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification."); *Ward* v. *Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (pre-*Comcast* decision recognizing that

"individualized damage determinations cut against class certification under Rule 23(b)(3)").

　　This Circuit and three others have held to the contrary, concluding that "damage calculations alone cannot defeat [class] certification."  Slip Op. 14 (quoting *Yokoyama* v. *Midland National Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).  *See also, e.g.*, *McMahon* v. *LVNV Funding, LLC*, No. 15-8018, -- F.3d --, 2015 WL 8119786, at *2 (7th Cir. Dec. 8, 2015) ("The need for individual damages determinations does not, in and of itself, require denial of a motion for certification." (brackets and quotation marks omitted)); *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) ("nothing in *Comcast* mandates a formula for classwide measurement of damages in all cases"), *cert. denied*, 135 S. Ct. 754 (2014); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860-861 (6th Cir. 2013) (" 'individual damages calculations do not preclude class certification under Rule 23(b)(3),' " and in " 'the mine run of cases, it remains the "black letter rule" that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members' " (quoting *Comcast*, 133 S. Ct. at 1437 (Ginsburg & Breyer, JJ., dissenting)), *cert. denied*, 134 S. Ct. 1277 (2014).

　　The question of the meaning of *Comcast* is now ripe for review following over two years of appellate decisions interpreting it.  And the cert-worthiness of

the question is further evidenced by the fact that four separate amicus briefs were filed in support of certiorari in *Carpenter Co.*, a case involving the same issue. *See* Brief Amicus Curiae of Atlantic Legal Foundation and International Association of Defense Counsel in Support of Petitioners, 2014 WL 7336437; Brief of the Chamber of Commerce of the United States of America and the National Association of Manufacturers as Amici Curiae in Support of Petitioners, 2014 WL 7336436; Brief of the Dow Chemical Company as Amicus Curiae in Support of Petitioners, 2014 WL 7273632; Brief of DRI - The Voice of the Defense Bar as Amicus Curiae in Support of Petitioners, 2014 WL 7273631. There is at least a reasonable likelihood that the Supreme Court would grant review of this issue in this case, which lacks *Carpenter Co.*'s vehicle problem (namely, that there was no appellate decision reviewing the challenged order, *see supra* pp. 5-6).

2. There is also a reasonable likelihood that the Supreme Court will reverse this Court's judgment. Here are the panel's words:

> [D]amage calculations alone cannot defeat certification.

Slip Op. 14 (quotation marks omitted). And here are *Comcast*'s:

> [I]t is clear that, under the proper standard for evaluating certification, [plaintiffs'] model falls far short of establishing that damages are capable of measurement on a classwide basis. Without presenting another methodology, [plaintiffs] cannot show Rule 23(b)(3) predominance: Questions of individual damage calculations will inevitably overwhelm questions common to the class.

133 S. Ct. at 1433. These two holdings cannot be reconciled.

14

The panel, for its part, tried to minimize *Comcast* as standing for a narrow proposition: A proposed classwide damages model must be designed to measure only the damages attributable to the class's theory of liability. Slip Op. 15-16. But that was only half of the calculus in *Comcast*. The Court held that the plaintiffs' model "must measure only those damages attributable to [their] theory" of liability *in order to* "establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." 133 S. Ct. at 1433. By skipping over the punch line, the panel untethered the specific error in *Comcast* from its source in Rule 23(b)(3). In other words, *Comcast* stands for the principle that individualized damages issues alone *can* defeat predominance, and the principle was transgressed in that particular case because plaintiffs' failure to offer an appropriately tailored class damages model left damages issues overwhelmingly individualized—and predominating over common issues of liability.[3]

In short, Google has a substantial argument that the panel erred in holding that the profusion of individual recovery questions in this case is irrelevant to the predominance analysis. That position is impossible to square with *Comcast* and contravenes the weight of authority in other circuits. There is, therefore, a reasonable likelihood that the Supreme Court will grant review and reverse.

---

[3] *Comcast*'s holding follows directly from Rule 23(b)(3) itself: Before certifying a class, a district court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members." The Rule applies equally to questions pertaining to liability and damages.

## II. THERE IS GOOD CAUSE FOR THIS COURT TO STAY THE MANDATE.

There is also "good cause" for the stay. Fed. R. App. P. 41(d)(2)(A). The proceedings are already stayed in the district court pending resolution of the case on appeal. *See* Dist. Ct. Dkt. No. 336. Continuing the stay to allow Google to seek review from the Supreme Court will maintain the status quo so that the parties are not litigating in parallel before two tribunals. This will also avoid wasting valuable judicial resources that would be devoted to the case on remand following the Ninth Circuit's reversal of the district court's denial of class-action certification. The district court will have to determine whether it must certify the class, and if so, the case becomes much more complex and resource-intensive for everyone involved. Among other tasks, the parties would need to resolve the appropriate scope of the class; engage in an extensive process to collect, produce, and analyze data to determine whether the class can be ascertained; if so, send out potentially hundreds of thousands of class notices; and resolve liability issues and the appropriate method of restitution. Yet all this work would be for naught if the Supreme Court grants certiorari and reverses. That more than suffices to show good cause.

Indeed, that same reasoning is why, for decades, district courts in this Circuit have regularly stayed cases when appellate resolution of a disputed question of law could render further proceedings futile. *See, e.g.*, *Versata Software, Inc.* v. *Dorado Software, Inc.*, No. 2:13-CV-00920-MCE, 2014 WL 1330652, at *4 (E.D. Cal.

Mar. 28, 2014) ("[I]t would be a waste of judicial resources for this case to move forward at this time. The most fair and efficient course of action is for this Court to stay this action pending resolution of *CLS Bank* at the Supreme Court."); *Branch Banking & Trust Co.* v. *Iny*, No. 2:11-CV-01777-MMD, 2012 WL 6644806, at *2 (D. Nev. Dec. 19, 2012) (granting stay because "[f]orcing the parties to go forward with this litigation and proceed with motion practice and discovery, which may ultimately be futile in light of the Nevada Supreme Court's decisions, would result in unnecessary expenses and a waste of the parties and the court's time and resources"); *In re Taco Bell Wage & Hour Actions*, No. 1:07-CV-01314-OWW, 2011 WL 3846727, at *5 (E.D. Cal. Aug. 30, 2011) (staying the case pending the California Supreme Court's resolution of cases on disputed questions of state law because of "judicial economy and the orderly course of justice * * * and the potential waste of both parties' and judicial resources"); *Fletes* v. *John I. Haas, Inc.*, No. CIV. 89-85-FR, 1989 WL 151722, at *1 (D. Or. Nov. 29, 1989 ("The court finds that it would be a waste of judicial resources and a hardship on [the defendant] to conduct a trial until the decision in [a pending Supreme Court case] clarifies the applicable law.").

No more of a showing than that is required in this Circuit. "[A] party seeking a stay of the mandate following this court's judgment need not demonstrate that exceptional circumstances justify a stay." *Bryant* v. *Ford Motor*

*Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989); *United States* v. *Pete*, 525 F.3d 844, 850 n.9 (9th Cir. 2008) (quoting *Bryant*). *Compare Bryant*, 886 F.2d at 1529 (explaining that a showing of extraordinary circumstances is required only for a stay requested *after* certiorari has been *denied*). *See generally Ryan* v. *Schad*, 133 S. Ct. 2548, 2551 (2013) (assuming stay *after* certiorari *denial* permitted in extraordinary circumstances).

The Supreme Court applies a different standard for determining whether to stay a court of appeals' mandate pending a certiorari petition. *See, e.g.*, *Maryland* v. *King*, 133 S. Ct. 1, 2 (2012) (Roberts, C.J., in chambers) (requiring a reasonable probability that certiorari will be granted, a fair prospect that the court of appeals' decision will be reversed, and a likelihood that irreparable harm will result from the denial of a stay); *South Park Indep. Sch. Dist.* v. *United States*, 453 U.S. 1301, 1303 (1981) (Powell, J., in chambers) (describing these grounds as "well established"). The Federal Rules Committee could have adopted the Supreme Court's standard for Rule 41, but it did not. *See* Fed. R. App. P. 41 adv. comm. n. to 1994 amendments (recognizing that "[t]he Supreme Court has established conditions that must be met before it will stay a mandate," but rather than adopting that test, adopting the current substantial-question-and-good-cause standard as "the type of showing that needs to be made"). Thus only a minority of the courts of appeals follows the Supreme Court's test. *See, e.g.*, *Senne* v. *Village of Palatine*,

695 F.3d 617, 619 (7th Cir. 2012) (Ripple, J., in chambers); *Nara* v. *Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007) (Nygaard, J., in chambers).  This court does not.  To the contrary, in the stay-of-mandate context, this Court has only used tests such as "exceptional circumstances" and "irreparable injury" to *deny* a stay.  *See Campbell* v. *Wood*, 20 F.3d 1050, 1051 (9th Cir. 1994) (en banc order) ("exceptional circumstances justify denying the stay"); *Coal. for Econ. Equity* v. *Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (denying stay because a "clear possibility of irreparable injury" exists "if a stay of the mandate is granted").  In any event, there is good cause for a stay in large part because Google has amply demonstrated that its certiorari petition is reasonably likely to be granted, and this Court's judgment reversed.  As stated, the district court below concluded a stay was warranted for the parties to resolve their class-action dispute on appeal.  That same logic applies pending Google's certiorari petition.

## CONCLUSION

For the foregoing reasons, issuance of the mandate should be stayed for 90 days pending Google's filing of a petition for certiorari.

Respectfully submitted,

MICHAEL G. RHODES
WHITTY SOMVICHIAN
KYLE C. WONG
COOLEY LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
(415) 693-2000
rhodesmg@cooley.com
wsomvichian@cooley.com
kwong@cooley.com

December 14, 2015

/s/ Neal Kumar Katyal
NEAL KUMAR KATYAL
MARY HELEN WIMBERLY
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com
maryhelen.wimberly@hoganlovells.com

*Counsel for Defendant-Appellee Google Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 14, 2015.

I certify that all participants in the case are represented by counsel who are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Neal Kumar Katyal
Neal Kumar Katyal